**Jose S. CHACON, Petitioner–Appellant,**

**v.**

**Tana WOOD, Respondent–Appellee.**

No. 92–35454.

United States Court of Appeals,
Ninth Circuit.

Submitted Oct. 6, 1993.

Filed Oct. 22, 1993.

Withdrawn Feb. 14, 1994.

Argued and Submitted April 7, 1994.

Decided Sept. 7, 1994.

Julia Moudy, Law Student, Gonzaga University School of Law, Supervised by Speedy Rice, University Legal Assistance, Spokane, WA, for petitioner-appellant.

John M. Jones, Asst. Atty. Gen., Olympia, WA, for respondent-appellee.

Before: TANG, BOOCHEVER, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Jose Chacon, a former Washington State prisoner, appeals the district court's denial of his petition for habeas corpus, 28 U.S.C. § 2254. Chacon claims that his guilty plea was involuntary and that he was denied effective assistance of counsel. Both of these claims center on allegations that a court interpreter deliberately failed to translate trial counsel's advice fully or accurately to Chacon. Specifically, Chacon (who claims that he is innocent) alleges that the interpreter vastly understated the probable sentence he would receive if he pleaded guilty, and that he would not have pleaded guilty if he had been fully informed of the consequences. On appeal, Chacon claims that the district court erred in concluding that he failed to exhaust state remedies on his guilty plea claim, as well as in summarily denying his ineffective assistance claim. Chacon filed this appeal in April of 1992, and a prior panel issued a memorandum disposition affirming in October of 1993. *See Chacon v. Blodgett*, No. 92-35454 (9th Cir. Oct. 22, 1993). However, that panel granted a petition for rehearing on February 14, 1994, and vacated its earlier decision. We heard oral argument on April 7, 1994, and now reverse.

## I. Facts

In 1984, Chacon was charged in Washington State court with one count of assault in the second degree, and one count of indecent liberties. Pursuant to a plea bargain, he pleaded guilty to the assault count, and the indecent liberties count was dismissed. The trial court sentenced him to a maximum term of ten years in prison, and the state Indeterminate Sentence Review Board set an excep-

tional minimum term of 60 months, departing upward from the guideline range of 8–10 months. Although Chacon did not take any direct appeal from his conviction or sentence, he did make several attempts to pursue state postconviction remedies, all while acting pro se. His first personal restraint petition, filed in December of 1986, challenged only the ISRB's decision to set an exceptional minimum term. The Washington Court of Appeals dismissed this petition. Chacon then filed a pleading styled a "Reconsideration," which included several challenges to his conviction. The Washington Supreme Court treated this pleading as a motion for discretionary review and denied it on July 17, 1987.

Still proceeding pro se, Chacon initiated another round of state postconviction proceedings by filing a second personal restraint petition on March 14, 1988. Although this petition raised several challenges to his conviction, two are pertinent here. Chacon alleged that "he was compelled to plead guilty upon premises [sic] by his public defender made with promises he would receive a lighter sentence in his dealing with the prosecutor, with the understanding the judge would give him this lighter term in return for this plea of guilt." He also alleged that "[h]is court appointed attorney lied to him about these facts and concealed these defenses from the court and the accused." The Washington Court of Appeals ordered the Yakima County Superior Court to hold an evidentiary hearing on these claims.

At the hearing, which occurred on September 7, 1988, Chacon and Glen Paul Warren, Chacon's trial counsel, were the only two witnesses. Warren acknowledged that, at the time of the original trial court proceedings, he did not speak any Spanish and Chacon did not speak any English. Thus, all attorney-client communications between Chacon and Warren occurred through the intermediation of the Yakima County official court interpreter, "JG". JG also interpreted all of the trial court proceedings. JG, however, did not testify at the hearing. Instead, Chacon's advisory counsel, Walter Curnutt, represented to the court that he had spoken with her and that she had stated that she could not remember any of the specific communications she related in Chacon's case.

Chacon testified that Warren, by means of JG, told him on at least four occasions that he would only have to serve three months in prison if he pleaded guilty to the assault charge, but that "it could be very bad for me" if he went to trial and the jury convicted him of both counts. Warren denied saying that Chacon would only spend three months in prison if he pleaded guilty to the assault charge. He admitted to stating that there was a high likelihood that Chacon would receive consecutive terms of imprisonment if he were convicted of both counts. Warren also admitted that he could not have verified whether JG was fully and accurately translating these statements or any other part of his conversations with Chacon. Nor could he have verified whether JG was, at any time, properly informing Chacon of what was transpiring in connection with the court proceedings.

At the close of the evidentiary hearing, the court stated that it found Warren to be a credible witness, and that it found Chacon to be "sincere in his belief that he's been treated unfairly within the system." The Superior Court then issued written findings. These findings stated that Warren gave Chacon "full and proper representation," that Warren "did not mislead or improperly advise" Chacon on the consequences of his plea, that Warren did not tell Chacon he would receive only a three-month sentence if he pleaded guilty, and that Chacon's plea "was made freely and voluntarily." The court found that JG "is completely competent" and that Chacon "does not claim he had any problem understanding the interpreter," but it did not make any finding regarding Chacon's allegations that JG failed to provide complete and accurate translations to him.

The Court of Appeals found substantial evidence to support the Superior Court's findings, and it entered an order dismissing the petition on June 1, 1989. Chacon, still acting pro se, filed a petition for discretionary review in the Washington Supreme Court ten days later. This petition urged that the Court of Appeals erred in each of its conclusions, but it did not include any sus-

tained argument on these points aside from a two-page letter which Chacon appended to the petition. The Supreme Court denied the petition on November 1, 1989.

On June 26, 1991, Chacon filed this federal habeas petition pro se. The petition raised two grounds for relief: (1) "that the Conviction obtained by Plea of Guilty was unlawfully induced or not made voluntarily with the understanding of the nature of the charge and consequences of the Plea;" and (2) that he was denied effective assistance of counsel. Each of these grounds referred explicitly to the conduct of the interpreter, JG, in the trial court. With regard to the involuntary guilty plea claim, the petition stated that "during the guilty plea hearing whenever Mr. Chacon was addressed he would be saying to the Interpreter what are they saying she would simply say just say 'YES.'" With regard to the ineffective assistance claim, the petition made clear that it challenged not only Warren's actions but also "the validity of the actions or lack of action of [*JG*] acting as an Interpreter for the court." (emphasis in original). In support of his claims, Chacon alleged that JG had engaged in a pattern and practice of intentionally mistranslating court proceedings and inducing Spanish-speaking defendants to plead guilty involuntarily. According to the habeas petition, "Court Interpreter JG has [ ]now been Barred and dis[ ]missed from the Yakima County Superior Court as an interpreter for her negligence in a court of law when interpreting in legal issues and further for coerc[ing] Spanish origin clients into guilty pleas without informing them of the consequences and/or understanding of the nature of the charges against them."

On the state's motion, the district court concluded that Chacon had failed to exhaust state remedies on his involuntary guilty plea claim. Accordingly, on November 15, 1991, it dismissed the entire petition as a "mixed petition" under the rule of *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). However, the court's order of dismissal stated that "[i]f petitioner wishes to pursue his claim of ineffectiveness of assistance of counsel, he shall serve and file an amended petition regarding only that claim

within 30 days from the date of this order." Chacon then filed an amended petition which raised only the ineffective assistance claim. Once again, Chacon's petition explicitly put in issue "the validity of the actions or lack of action of [*JG*], acting as Interpreter for the court."

On February 18, 1992, the state filed a motion for summary denial of the amended petition. The state's motion argued that the district court should defer to the state court fact findings on the ineffective assistance issue—even though the state court had not made any findings regarding whether JG had accurately or completely translated the communications between Chacon and his counsel. In lieu of responding to this motion, Chacon filed a motion for voluntary dismissal of his petition without prejudice, in order to allow him to exhaust any unexhausted claims. Chacon claimed that he had not understood the district court's earlier order of dismissal, and that he had thought he was required to file an amended petition. On April 16, 1992, the district court denied Chacon's motion for voluntary dismissal. The court supported its decision with only the following conclusory statement: "It would neither be fair, nor in the interest of justice, to allow Petitioner to voluntarily dismiss his Amended Petition Without Prejudice, and for the court to fail to determine the merits of the ineffective assistance of counsel claim." By the same order, the district court granted the state's motion for summary denial. As the state had urged, the district court relied completely on the state court fact findings.

The district court issued a certificate of probable cause, which it purported to limit to the ineffective assistance issue, and Chacon filed this appeal on April 23, 1992. After Chacon had filed a pro se opening brief, the state had filed a responsive brief, and Chacon had filed a pro se reply, a motions panel ordered on January 29, 1993, that counsel be appointed for Chacon. Appointed counsel filed a brief on Chacon's behalf on June 7, and a panel of this court, without hearing oral argument, issued a memorandum disposition affirming on October 22, 1993. When Chacon's appointed counsel filed a petition for rehearing, the panel, by order dated Feb-

ruary 14 of this year, granted it and vacated its memorandum decision. The case was reassigned to this panel for oral argument. We heard oral argument on April 7. Chacon completed his term of incarceration on June 8, and we issued an order staying his impending deportation.

## II. Discussion

█ Before discussing the merits of Chacon's claims, we must consider whether his release from custody renders his challenge moot. Chacon's habeas petition was filed while he was still serving his sentence, but before we had the opportunity to address the merits of his position, he completed his term of imprisonment. A habeas petition challenging the underlying conviction is never moot simply because, subsequent to its filing, the petitioner has been released from custody. In 1968, the Supreme Court held that a habeas petition challenging a conviction becomes moot "only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." *Sibron v. State of New York*, 392 U.S. 40, 57, 88 S.Ct. 1889, 1900, 20 L.Ed.2d 917 (1968). Almost twenty years later, we said, "[w]e have repeatedly reaffirmed the presumption that collateral consequences flow from *any* criminal conviction." *Hirabayashi v. U.S.*, 828 F.2d 591, 605–06 (9th Cir.1987) (emphasis added). In this day of federal sentencing guidelines based on prior criminal histories, *see, e.g.,* U.S.S.G. § 4A1.1 (adding points for prior convictions), U.S.S.G. § 4B1.1 (defining "career offenders" and setting out harsher sentencing provisions for them), federal "career criminal" statutes, *see, e.g.,* 28 U.S.C. § 994(h) (mandating harsher sentences for certain "career offenders"), and state repeat offender provisions, *see, e.g.,* Cal.Penal Code §§ 1170.1, 1170.95 (setting out more severe punishment for those previously convicted of certain other offenses), the *Hirabayashi* presumption is an irrebuttable one. Once convicted, one remains forever subject to the prospect of harsher punishment for a subsequent offense as a result of federal and state laws that either already have been or may eventually be passed. As a result, there is simply no way ever to meet the *Sibron* moot-

ness requirement: that there be "no possibility" of collateral legal consequences. Accordingly, Chacon's challenge to his conviction is not moot.

In a formal sense, Chacon asserts two separate claims: that he was denied the effective assistance of counsel and that his guilty plea was involuntary. In substance, however, these claims overlap almost completely, for they both are based on Chacon's allegation that JG incompletely and inaccurately translated the court proceedings, as well as the discussions between Chacon and his trial counsel. If Chacon succeeds in showing that JG's malfeasance resulted in his receiving ineffective assistance of counsel, then he will necessarily also prevail on the merits of his claim that JG's actions rendered his guilty plea involuntary. Nevertheless, because the procedural histories of the two claims are quite different, we will discuss them separately.

## A. Ineffective Assistance Claim

The district court summarily denied Chacon's ineffective assistance of counsel claim. It relied on the findings of fact made by the state Superior Court at the post-conviction hearing, even though that court did not decide the issue that provides the central basis for Chacon's ineffective assistance claim—whether the interpreter accurately and fully translated Warren's advice to Chacon. Because this issue cannot be resolved on the basis of the state court record alone, and because Chacon has alleged facts which would if true constitute a violation of the Sixth Amendment, we reverse and remand for an evidentiary hearing on the ineffective assistance claim.

To succeed on an ineffective assistance claim, a defendant who pleads guilty must satisfy a two-part test. First, he "must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases." *Iaea v. Sunn*, 800 F.2d 861, 864 (9th Cir.1986). Second, even if the defendant establishes that his counsel's performance was deficient, he must also demonstrate prejudice. "To satisfy the prejudice component in the context of a

guilty plea, the defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* at 865 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985)).

In *Iaea*, we held that a defendant can satisfy the "deficient performance" prong of the test by showing that counsel induced him to plead guilty by presenting a "gross mischaracterization of the likely outcome." *Iaea*, 800 F.2d at 865. Here, Chacon clearly alleges that he was presented with a gross mischaracterization of the likely outcome—he alleges that he was told that he would serve only three months in jail if he pleaded guilty, but he has been forced to serve ten years imprisonment. He also clearly alleges that, absent this erroneous advice, he would not have pleaded guilty. At the state court evidentiary hearing, Chacon testified:

> If he would have said what was going to really happen to me I wouldn't have pled guilty, for the reason that the whole time that I have been here for something that I didn't do.

As in *Iaea*, the record contains ample evidence to demonstrate that Chacon "was very reluctant to testify," *Iaea*, 800 F.2d at 865, and that he may have "placed particular reliance on erroneous advice in deciding whether or not to plead guilty." *Id.* If Chacon alleged that his trial counsel was the source of the gross mischaracterization of his likely sentence, he would clearly have alleged a substantial ineffective assistance claim under *Iaea. See id.* at 865–66.

This case is somewhat more difficult than *Iaea*, for Chacon does not allege that his *counsel* was the one who made such an extraordinarily erroneous representation regarding his likely sentence. Rather, he claims that the *interpreter* told him that his counsel had said he would spend only three months in jail if he pleaded guilty. But this ultimately makes no difference in our analysis. The facts alleged by Chacon state an

ineffective assistance of counsel claim just as surely as if Chacon alleged that counsel himself had made the misstatements. When considering a claim of ineffective assistance, we focus on the assistance *actually received* by the defendant. The purpose of the right to effective assistance of counsel is not to pass judgment on the actions of defense attorneys, but to ensure that criminal defendants *receive* the zealous, competent defense to which they are entitled. *Cf. United States v. Gouveia*, 467 U.S. 180, 189, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146 (1984) (stating that the purpose of the right to counsel is one of "protecting the unaided layman at critical confrontations with his adversary"). When the defendant and his counsel can communicate only through an intermediary, unprofessional conduct on the part of the intermediary can render counsel's assistance wholly ineffective, even if counsel himself is acting in complete accordance with professional standards.[1]

Numerous courts have recognized that the presence of an interpreter who provides accurate and complete translations may be necessary to protect the defendant's trial rights. For example, in *United States v. Carrion*, 488 F.2d 12 (1st Cir.1973) (per curiam), *cert. denied*, 416 U.S. 907, 94 S.Ct. 1613, 40 L.Ed.2d 112 (1974), the First Circuit held that fair and accurate interpretation of proceedings may be essential to a defendant's rights under the Confrontation Clause. *See id.* at 14 ("Clearly, the right to confront witnesses would be meaningless if the accused could not understand their testimony, and the effectiveness of cross-examination would be severely hampered."). *See also United States v. Joshi*, 896 F.2d 1303, 1309 (11th Cir.) (acknowledging that the Court Interpreters Act, 28 U.S.C. § 1827, was intended to protect the existing constitutional rights of non-English speaking criminal defendants), *cert. denied*, 498 U.S. 986, 111 S.Ct. 523, 112 L.Ed.2d 534 (1990). We believe that the reasoning of these cases applies equally here. An accurate and complete

---

**1.** Indeed, in a case like the present one, where the defendant pleads guilty on the advice of counsel, the accuracy and completeness of the interpreter's translations becomes especially im-

portant, for the communication between the defendant and his counsel constitutes essentially the *entire* representation.

translation of all attorney-client communications was necessary to ensure that Chacon received *effective* assistance of counsel. In the absence of such translation, Chacon could not *receive* that assistance. Thus, Chacon stated an ineffective assistance claim when he alleged that the interpreter's translation of his counsel's advice was wholly inaccurate and misleading.

■ The district court summarily denied Chacon's claim on the basis of the state court's findings of fact. There was, however, no relevant state court finding to which deference was due under 28 U.S.C. § 2254(d). As we stated in *Iaea*, the ultimate state court determination of the effectiveness of counsel or of the voluntariness of a guilty plea is not subject to deferential review. *Iaea*, 800 F.2d at 864. Rather, it is the state court's findings on questions of historical fact that are presumed to be correct under § 2254(d). Here, the state court made no findings of the latter type with respect to Chacon's critical contention. The Superior Court's findings focused on what Warren, the *trial counsel*, had told Chacon. Although the court did include a finding that JG "is completely competent," and that Chacon "does not claim he had any problem understanding the interpreter," these findings are not responsive to Chacon's contention—that [JG], however competent and however easy to follow, intentionally mistranslated Warren's advice to him. Whether or not Chacon understood perfectly what JG told him is irrelevant: Chacon's allegation is that what JG told him is not what Warren said. Accordingly, the state court's findings do not serve to defeat Chacon's federal habeas petition.

■ Upon remand, the district court must hold an evidentiary hearing on Chacon's claim. While in view of the nature of the events in state court a hearing might be required under a number of the "circumstances" that mandate hearings, *see Townsend v. Sain*, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963),[2] Chacon is clearly entitled to one under the fourth of the *Townsend* circumstances, which relates to newly discovered evidence. Chacon unquestionably raises "a substantial allegation of newly discovered evidence." *Id.* He claims that JG was engaged in a pattern and practice of intentionally providing erroneous translations to Spanish-speaking defendants in order to mislead them into pleading guilty involuntarily, and that this fact was established to the satisfaction of state judicial authorities. In support of this claim, he alleges that "Court Interpreter [JG] has [ ]now been Barred and dis[ ]missed from the Yakima County Superior Court as an interpreter for her negligence in a court of law when interpreting in legal issues and further for coerc[ing] Spanish origin clients into guilty pleas without informing them of the consequences and/or understanding of the nature of the charges against them." Liberally construed, Chacon's pro se habeas petition alleges that, following the proceedings in state court, JG was barred from serving as an interpreter in the future on the basis of allegations which are similar if not identical to those Chacon raises here. The alleged newly-discovered evidence clearly "bear[s] on the constitutionality of the applicant's detention." *Townsend*, 372 U.S. at 317, 83 S.Ct. at 759. Moreover, we cannot consider it to be "frivolous or incredible," *id.*, in part because the state has *never* denied the allegation in the more than three years of this federal habeas proceeding.

The Supreme Court's recent decision in *Keeney v. Tamayo–Reyes*, — U.S. —, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), does not detract from our conclusion that a hearing is required here. In *Tamayo–Reyes*, the Supreme Court overruled *Townsend* in part.

---

2. In *Townsend*, 372 U.S. at 313, 83 S.Ct. at 757, the Supreme Court set forth six circumstances in which a federal district court sitting in habeas is required to hold an evidentiary hearing.

We hold that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record

as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Id.*

Specifically, it held that a hearing is not mandatory under *Townsend's fifth* circumstance ("the material facts were not adequately developed at the state court hearing") unless the petitioner can show cause for failing to develop the material facts in state court and prejudice resulting therefrom. *See Tamayo–Reyes,* —— U.S. ——, 112 S.Ct. at 1717. Both the *Tamayo–Reyes* opinion, *see id.* at ——, 112 S.Ct. at 1720–21 n. 5, and Justice O'Connor's dissent, *see id.* at ——, 112 S.Ct. at 1726–27 (O'Connor, J., dissenting), suggest that, as is evident from the very nature of the various *Townsend* circumstances, the cause-and-prejudice rule imposed by *Tamayo–Reyes* applies principally to cases in which the petitioner seeks an evidentiary hearing on the basis of *Townsend's* fifth circumstance. In this case, as we have noted, a hearing is mandatory under the *fourth* circumstance, a circumstance to which the cause and prejudice requirement is clearly inapplicable. When a petitioner raises "a substantial allegation of newly discovered evidence," *Townsend,* 372 U.S. at 313, 83 S.Ct. at 757, it makes no sense to require him to demonstrate cause and prejudice before receiving a federal court hearing. Indeed, the "cause and prejudice" requirement would be satisfied in *any* case in which a hearing is mandatory under the fourth circumstance. Under *Townsend,* newly discovered evidence mandates a hearing only if it "could not reasonably have been presented to the state trier of facts." *Id.* at 317, 83 S.Ct. at 759. This standard is essentially identical in substance to the standard for determining whether cause exists for the failure to raise a claim or present evidence in state court. *See, e.g., Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986) ("[A] showing that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials' made compliance impracticable, would constitute cause under this standard.") (citations omitted). Moreover, a petitioner is entitled to a hearing under the fourth circumstance only if the newly discovered evidence "bear[s] upon the constitutionality of the applicant's detention." *Townsend,* 372 U.S. at 317, 83 S.Ct. at 759. The denial of evidence satisfying this standard will necessarily be prejudicial. Because Chacon is entitled to a hearing on his ineffective assistance claim under the fourth circumstance, the cause and prejudice rule of *Tamayo–Reyes* does not apply.[3]

## B. Due Process Claim

In his pro se brief, Chacon argues that he has fully exhausted his state remedies on the claim that his due process rights were violated by JG's misrepresentations which induced him to enter an involuntary guilty plea. He contends that the district court erred in dismissing his original habeas petition as a mixed petition and requiring him to submit an amended pleading omitting the due process claim. He requests that we reinstate his original petition and remand for consideration on the merits. We conclude that we have jurisdiction to decide this issue, and that the district court erred in dismissing the guilty plea claim. The district court should pursue the merits of this claim at the evidentiary hearing.

### 1. Is this claim properly before us?

The state's brief does not address any issues relating to Chacon's claim that his guilty plea was involuntary. The state takes the position that the claim is not properly before us. However, the state is incorrect. We have jurisdiction to review the district court's dismissal of the due process claim.

■ Two possible reasons are offered why we would not have jurisdiction over this claim, but neither has merit. First, Chacon's appointed counsel appears to assume that the district court's grant of a certificate of probable cause, which was explicitly limited to the ineffective assistance issue, prevents us from hearing the due process claim. However, the district court's refusal to grant a certificate of probable cause to allow Chacon to pursue his involuntary guilty plea claim on appeal

---

**3.** A hearing is also required under *Townsend's* first circumstance, which requires a hearing in federal court if "the merits of the factual dispute were not resolved in the state hearing." *Id.* As we explained above, the crucial factual dispute in this case concerns the accuracy of JG's translations; the state court did not make any finding on this issue.

has no effect on the issues we can consider. We have unequivocally held that a district court's purported grant of a limited certificate of probable cause cannot serve to limit the issues considered on appeal. *See Van Pilon v. Reed*, 799 F.2d 1332, 1335 (9th Cir. 1986) ("We agree with the Third and Sixth Circuits that the scope of our review cannot be limited by a certificate of probable cause."). When a district court grants a so-called limited certificate of probable cause, the court of appeals must ignore the limitation, and "address all of [the petitioner's] assertions of error." *Id.*[4]

■■■ Second, the state argues that the due process claim "was omitted from Chacon's amended petition and he cannot now litigate that claim for the first time on appeal." However, Chacon is not raising his guilty plea claim "for the first time on appeal." He raised the claim in his original habeas petition, and the district court ordered him to withhold it from his amended petition. Chacon's appeal extends to the district court's order directing him to withdraw his guilty plea claim. It is appropriate for him to challenge that order in an appeal filed after a final denial of his amended petition.[5] The district court's order dismissing the initial habeas petition but not the underlying action was an interlocutory order, *see California v. Harvier*, 700 F.2d 1217, 1218–20 (9th Cir.), *cert. denied*, 464 U.S. 820, 104 S.Ct. 82, 78 L.Ed.2d 92 (1983), which was appealable as part of the appeal from the final judgment. When reviewing final judgments in civil proceedings we have jurisdic-

tion to review any interlocutory orders or other rulings that may have affected the outcome below. *See U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1103 (9th Cir.1985) ("While we recognize the importance of correcting erroneous interlocutory rulings as early as possible, the failure to challenge an erroneous interlocutory ruling does not make the error appeal proof when the final judgment comes before this court for review."). The district court's dismissal of Chacon's due process claim clearly falls within this rule.

### 2. The Merits

Because we conclude that this claim is properly before us, we must address the merits of the district court's conclusion that Chacon failed to exhaust state remedies on his due process claim. We conclude that the district court erred. As we recently explained, "[t]o satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim to the state courts." *Henry v. Estelle*, 993 F.2d 1423, 1425 (9th Cir.1993) (citing *Picard v. Connor*, 404 U.S. 270, 277–78, 92 S.Ct. 509, 513–14, 30 L.Ed.2d 438 (1971)). "A habeas petitioner may, however, reformulate somewhat the claims made in state court; exhaustion requires only that the *substance* of the federal claim be fairly presented." *Tamapua v. Shimoda*, 796 F.2d 261, 262 (9th Cir. 1986) (emphasis added). Moreover, the petitioner need not have even identified any specific constitutional provision before the state

---

**4.** We do not bind Chacon to the manifestly erroneous concession in the initial brief prepared by appointed counsel. There, counsel said that "[b]ecause of the denial of probable cause, we do not believe that this issue can be argued on appeal." In his pro se brief, Chacon clearly sought to challenge the dismissal of his due process claim. Moreover, it is the law of the case that Chacon is entitled to raise his claim on appeal—a prior motions panel denied Chacon's application for a certificate of probable cause on the guilty plea issue "as unnecessary." Third, the one case cited by Chacon's appointed counsel on this point, *Tinsley v. Borg*, 895 F.2d 520, 523 (9th Cir.1990), *cert. denied*, 498 U.S. 1091, 111 S.Ct. 974, 112 L.Ed.2d 1059 (1991), does not have *anything* to do with the effect of purported limitations on the certificate of probable cause. The issue in *Tinsley* was whether a timely motion for a certificate of probable cause would be treat-

ed as a timely notice of appeal (the court said yes). This can hardly be the basis for allowing appointed counsel to forfeit an argument which Chacon clearly desires to raise and is clearly entitled to bring. Finally, appointed counsel resuscitated the claim in the petition for rehearing which was granted by the prior panel.

**5.** The two cases cited by the state are inapposite. In both cases, the petitioners sought to raise on appeal claims which had not been included in their *original* habeas petitions. The cases did not involve any orders from the district court which directed the petitioners to file amended petitions and omit claims that they had originally included. *See Willard v. California*, 812 F.2d 461, 465 (9th Cir.1987); *Lang v. Callahan*, 788 F.2d 1416, 1418 (9th Cir.1986).

court. So long as a defendant presents the state courts "with all the operative facts giving rise to the asserted constitutional principle," we have held that "[i]t would be unnecessary for him to cite to the state court book and verse on the federal constitution." *Daugharty v. Gladden,* 257 F.2d 750, 758 (9th Cir.1958).[6]

▬ In his second personal restraint petition, prepared pro se, Chacon alleged that "he was compelled to plead guilty upon premises [*sic*] by his public defender made with promises he would receive a lighter sentence in his dealing with the prosecutor, with the understanding the judge would give him this lighter term in return for this plea of guilt." He also alleged that "[h]is court appointed attorney lied to him about these facts and concealed these defenses from the court and the accused." Although both the state and the district court appear to have assumed that these allegations raised only a claim of ineffective assistance of counsel, they also "fairly presented" a claim that Chacon had been induced to plead guilty in violation of the standards set forth in *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Indeed, Chacon's claim (which states that he was "compelled to plead guilty" and which relies on his erroneous "understanding" of the consequences of his plea) clearly evokes the language the Supreme Court used in *Brady. See id.* at 748 & n. 6, 90 S.Ct. at 1468–69 & n. 6 (holding that guilty pleas, as waivers of the right to a trial, "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences," and noting "[t]he importance of assuring that a defendant does not plead guilty except with a full

understanding of the charges against him and the possible consequences of his plea").

If there were any doubt about whether Chacon's petition raised a challenge to the voluntariness of his guilty plea, Chacon himself resolved it at the state court post-conviction evidentiary hearing. He specifically stated that "I pled guilty against my will." The state trial court clearly concluded that Chacon's pleadings and testimony put the validity of his guilty plea at issue, for it explicitly found that "[t]here was no pressure, threatened harm, or other improper methods used to obtain the guilty [*sic*] plea. The plea was made freely and voluntarily." [7] When the state Court of Appeals dismissed Chacon's petition, its two-page order quoted the Superior Court's findings regarding the voluntariness of the plea. In these circumstances, we conclude that the substance of Chacon's involuntary guilty plea claim was "fairly presented" to the state courts.

▬ The district court appeared to decide that, even if the general involuntary guilty plea claim was presented to the state courts, the specific allegations regarding the interpreter's misconduct were not. A claim may be considered unexhausted if it includes new factual allegations which were not presented to the state courts. *See Hudson v. Rushen,* 686 F.2d 826, 830 (9th Cir.1982), *cert. denied,* 461 U.S. 916, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983). However, new factual allegations do not render a claim unexhausted unless they "fundamentally alter the legal claim already considered by the state courts." *Vasquez v. Hillery,* 474 U.S. 254, 260, 106 S.Ct. 617, 622, 88 L.Ed.2d 598 (1986). To the extent that any discrepancies exist between the allegations in Chacon's pro se personal restraint petition and those in his pro se federal habe-

---

6. Daugharty's "book and verse" statement was quoted with approval in *Picard,* 404 U.S. at 278, 92 S.Ct. at 513; *Tamapua,* 796 F.2d at 263; and, derivatively, in *Henry,* 993 F.2d at 1426 (directly quoting *Tamapua* ).

7. The district court relied in part on the decision made by Chacon's advisory counsel at the state court reference hearing not to request that the Court of Appeals be provided with a transcript of the plea hearing. The advisory counsel reasoned that "I have not heard anything from my client that's been said today which would indicate that

the proceed—correct procedures were not followed. The only thing was that he was misadvised by his attorney." Taken in context, advisory counsel at best only abandoned any claim that the trial court failed to follow the proper procedures in conducting the plea colloquy. His comments were in no way inconsistent with the claim that was clearly presented by Chacon's petition and testimony—that his guilty plea was not knowing, intelligent, understanding, and voluntary.

as petition, they do not "fundamentally alter" Chacon's legal claim.

■ In both the state courts and the federal courts, Chacon has claimed that his guilty plea was involuntary because he was grossly misadvised regarding the possible consequences. This legal claim is fundamentally the same regardless of whether the misinformation stemmed from an accurate or an inaccurate translation of counsel's advice. What matters is that the petitioner entered into his plea after receiving wholly erroneous and misleading advice and thus did not act knowingly, voluntarily, and intelligently. Where, as here, counsel's only interaction with the defendant is through an interpreter, there is no constitutional difference between a claim that counsel himself directly induced an involuntary guilty plea and a claim that while acting as counsel's translator or agent the interpreter induced such a plea. Both claims rely on statements that were either actually or purportedly made by counsel.

Even if there were some legal difference between a claim that a petitioner received erroneous information through a proper translation of counsel's advice and a claim that he received erroneous information as a result of an improper translation of counsel's advice, Chacon presented the state courts with the factual basis for *both* claims. All of the participants in the state court postconviction hearing in this case evidenced an understanding that Chacon's petition raised the issue of the accuracy of JG's translations. Chacon's advisory counsel made a point of advising the court that he felt that he "had the duty to contact the interpreter," and that

JG had told him that she could not remember any specific communications made to Chacon. The state presented testimony from Warren, Chacon's trial counsel, that JG had translated attorney-client discussions between the two of them. Indeed, the state's attorney asked Warren a question which struck on precisely the issue Chacon raises in his federal habeas petition—whether JG translated the whole plea agreement to Chacon.[8] The state's attorney asked a similar question of Chacon himself: "Mr. Chacon, before you pled guilty, did the interpreter read the Statement of Defendant on Plea of Guilty to you?" Pointedly, the state's attorney did *not* ask Chacon *any* questions about what his *lawyer* had told him; he only asked what the *interpreter* had told him.

These events at the hearing appear to make it clear that both parties were aware that the accuracy of JG's translations was at issue in connection with the involuntary guilty plea claim Chacon presented to the state court. Moreover, Chacon himself directly raised the issue of the interpreter's conduct in the Washington Supreme Court in an attachment to his petition for review. In that document, he expressly accused his interpreter of withholding information from him.

In view of the above, we conclude that the state court was "presented with all the operative facts giving rise to the asserted constitutional principle," *Daugharty*, 257 F.2d at 758, and that Chacon fairly presented his claim regarding the interpreter to the state court.[9]

8. Q. But do you recollect that it would appear to you that she did read the entire document in Spanish without knowing exactly what she said?

A. To be completely honest with you, Mr. Hackett, I don't independently recollect standing there and listening to her appear to read the entire document in Spanish. I would have told her to read it to him and she would have told me that she had read it to him, otherwise I would not have presented it to the Court.

The state's attorney phrased the question in a somewhat awkward manner because Warren had stated, in response to the previous question, that he did not understand Spanish at all.

9. The Supreme Court's decision in *Tamayo–Reyes* does not alter our analysis. *Tamayo–Reyes*

did not impose any new, stricter rules regarding the exhaustion of state remedies. Specifically, it did not impose any new rule that a habeas petitioner must present to the state courts *every piece of evidence* supporting his federal claims in order to satisfy the exhaustion requirement. Rather, as we have explained above, *Tamayo–Reyes* merely restricted the number of cases in which a federal court is required to hold an evidentiary hearing pursuant to *Townsend's* fifth circumstance. Although the *Tamayo–Reyes* Court stated that its rule was "fully consistent with and gives meaning to the requirement of exhaustion," —— U.S. at ——, 112 S.Ct. at 1720, it did not suggest that it was altering longstanding exhaustion principles.

### 3. Summary

Because Chacon exhausted his state remedies with respect to his claim that his guilty plea was not made knowingly, intelligently, understandingly, or voluntarily, we reverse the district court's dismissal of this claim and remand for consideration on the merits. The district court shall consider this claim at the evidentiary hearing. Because the state courts made no factual finding with respect to the accuracy and completeness of JG's translations, *see* 28 U.S.C. § 2254(d)(1), the district court shall determine that question after receiving and considering any relevant evidence the parties may offer.

### III. Conclusion

For the foregoing reasons, we hold that the district court should conduct a hearing and consider evidence on each of Chacon's claims. The judgment of the district court is REVERSED and the cause REMANDED for an evidentiary hearing.