132 F.3d 40
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Craig Anthony CARRINGTON, Defendant-Appellant.
 No. 96-35934.
 United States Court of Appeals, Ninth Circuit.
 Argued and submitted Dec. 1, 1997.
Decided Dec. 10, 1997.
 
 Appeal from the United States District Court for the Western District of Washington Robert J. Bryan, District Judge, Presiding.
 Before WRIGHT, REAVLEY** and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Craig Carrington appeals the denial of his motion to vacate his sentence and conviction under 28 U.S.C. § 2255. His primary argument is that his counsel persuaded him to plead guilty by telling him that the plea would result in a sentence of 12 years, when in fact. he received a sentence of 27 years.
 
 
 3
 Carrington pleaded guilty to conspiracy to distribute cocaine. Following a lengthy sentencing hearing he was sentenced to a prison term of 27 years. After his conviction and sentence were affirmed on direct appeal, Carrington brought this § 2255 action. He alleges that the guilty plea should be set aside because his counsel misrepresented the sentence he would receive and failed to properly investigate the case before advising him to plead guilty, and because the guilty plea was accepted in violation of Fed.R.Crim.P. 11 requirements. The district court denied the motion. On appeal, Carrington reurges these grounds for setting aside his guilty plea, and also argues that the district court erred in denying his motion without conducting an evidentiary hearing. We affirm.
 
 DISCUSSION
 
 4
 A. Defense Counsel's Representation, Regarding Sentence
 
 
 5
 In the context of a guilty plea, the effectiveness of counsel is measured by the standards set out in Strickland v. Washington, 466 U.S. 668 (1984). The petitioner must show that his counsel fell below an objective standard of reasonableness, and must show prejudice as well. Hill v. Lockhart, 474 U.S. 52, 57-59 (1985). As to prejudice, Hill teaches that the inquiry is whether "there is a reasonable probability that, but for the counsel's errors, the petitioner would not have pleaded guilty and would have insisted on going to trial." Id. at 59.
 
 
 6
 In support of his motion Carrington offered the affidavits of himself, his father and his court appointed trial counsel, Thomas West. Carrington states in his affidavit:
 
 
 7
 6. During a three-way telephone conversation with my dad and Mr. West shortly before my trial was scheduled to begin, Mr. West stated that if I went to trial, I would likely be convicted and sentenced to 40 years.
 
 
 8
 He further stated that by pleading guilty, I would receive a sentence of 12 years and be released from custody after serving no more than eight or nine years.
 
 
 9
 8. On the morning my trial was to begin, Mr. West again told me than I would receive a 12 year sentence if I pleaded guilty.
 
 
 10
 11. When the Court first asked me during my change of plea hearing if anyone told me what my sentence would be if I pleaded guilty, I initially answered "yes." Mr. West then nudged me and told me to say "no" so that the court would accept my guilty plea.
 
 
 11
 14. I never expected to receive a sentence more that double that of my co-defendants, and if I had known that I would receive a sentence of 27 years, I never would have pleaded guilty.
 
 
 12
 Carrington's coconspirators received substantially shorter sentences. However, Carrington's relatively long sentence is in part due to his high criminal history category and the court's finding that he was a leader or organizer. He does not challenge these findings.
 
 
 13
 Carrington's father confirmed the three-way phone conversation:
 
 
 14
 8. During the call, Mr. West stated that if my son went to trial, he would most likely be convicted and face up to 40 years in prison.
 
 
 15
 9. Mr. West further stated that if my son plead[ed] guilty, he would receive 12 years with the possibility of only doing eight or nine years in custody.
 
 West states in his affidavit:
 
 16
 12. Mr. Carrington was eventually sentenced to 324 months (27 years) in prison. This sentence was more that double that which I had anticipated from discussions with AUSA Bell and the Probation Department and had conveyed to Mr. Carrington when I advised him to plead guilty.
 
 
 17
 However, in his plea agreement Carrington "acknowledges that no promises of any kind have been made as to his sentence, and that the determination and imposition of an appropriate sentence remains in the discretion of the Court."
 
 
 18
 At the Rule 11 hearing Carrington acknowledged the following in response to the court's questions.
 
 
 19
 1. He faced a maximum imprisonment of 40 years.
 
 
 20
 2. "You have acknowledged in this [plea] agreement that no promises of any kind have been made to you in regard to your sentence and that that remains up to the court and the law to determine."
 
 
 21
 3. "I should tell you also that no one .... not your attorney, not Mr. Bell, or me--can say now how the guidelines will apply in your case."
 
 
 22
 4. "So anything Mr. West may, have told you, for example, about what he expects your sentence would be his best judgment. based on the information he has at this time, but can be only an estimate at this time. He can't tell you or no one else can tell you what your sentence will actually be."
 
 
 23
 5. No one has "made any promise to you about what your sentence was actually going to be if you pled guilty."
 
 
 24
 6. "[I]f the sentence that you actually get here is more severe than what you might expect, you're still bound by your plea once you plead guilty. You can't withdraw you plea just because you don't like your sentence."
 
 
 25
 Consistent with his affidavit, Carrington did change one on of his answers during the hearing, perhaps at the "nudging" of his counsel:
 
 
 26
 Q. Okay. Has anyone told you what your sentence would actually be if you pled guilty?
 
 
 27
 A. Yes, Your Honor.
 
 
 28
 Q. And have they--well--
 
 
 29
 A. I mean, just like you say about the maximum amount and all this.
 
 
 30
 Q. Okay. But has anyone told you that you are going to get X number of years if you pled guilty? A certain number of years?
 
 
 31
 A. No. Not Exactly.
 
 
 32
 Q. Okay. You understand that no one can tell you that because no one knows for sure at this time?
 
 
 33
 A. Yeah.
 
 
 34
 Assuming the facts alleged in Carrington's affidavits are true, we agree with the district court that his claim fails. The general rule is that an inaccurate prediction of sentence by defense counsel does not entitle the claimant to relief under an ineffective assistance of counsel claim or on the theory that the guilty plea was involuntary. In such cases we have either held that the prediction does not fall below "the wide range of professionally competent assistance," Strickland, 466 U.S. at 690, or that the prediction does not meet the prejudice requirement of Strickland.
 
 
 35
 In Doganiere v. United States, 914 F.2d 165 (9th Cir.1990), the § 2255 petitioner argued that his counsel was ineffective in telling him that he would receive a sentence of not more than 12 years imprisonment, and lie received 15 years. The court held that the prejudice requirement of Strickland was not met, since "prior to accepting his guilty plea, the court explained that the discretion as to what the sentence would be remained entirely with the court." Id. at 168. Similarly, in our case, at the Rule 11 hearing Carrington agreed with the court that he had "acknowledged in this [plea] agreement that no promises of any kind have been made to you in regard to your sentence and that that remains up to the court and the law to determine." The agreement itself states that Carrington "acknowledges that no promises of any kind have been made as to his sentence, and that the determination and imposition of an appropriate sentence remains Ln the discretion of the Court."
 
 
 36
 In United States v. Michlin, 34 F.3d 896 (9th Cir.1994), a direct appeal, the defendant claimed his guilty plea could not stand because his attorney failed to accurately inform him of the sentencing range he was facing. We rejected the claim, noting that "an erroneous prediction by a defense attorney concerning sentencing does not entitle a defendant to challenge his guilty plea." Id. at 899 (quoting United States v. Garcia, 909 F.2d 1346, 1348 (9th Cir.1990)). We recognized that an exception might arise in a case of "gross mischaracterization of the likely outcome," Michlin, 34 F.3d at 899 (quoting Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir.198)), but that the appellant had not demonstrated a gross mischaracterization.
 
 
 37
 In Garcia, supra, the defendant appealed the district court's denial of his motion to withdraw his guilty plea. He claimed that his defense counsel had told him he would serve no more than 8 years, and he received a sentence of 235 months. We affirmed, noting that "it is well established that an erroneous prediction by a defense attorney concerning sentencing does not entitle a defendant to challenge his guilty plea." Garcia, 909 F.2d at 1348. We further held that the plea was knowing and voluntary, noting that the defendant. had acknowledged in the plea agreement that the sentencing judge was free to impose a penalty of up to life in prison and understood that the court was not bound by any sentencing agreement. Id.
 
 
 38
 In United States v. Keller, 902 F.2d 1391 (9th Cir.1990), the § 2255 petitioner claimed that his counsel had assured him that he would spend no more that 36 months in prison, and he was sentenced to 12 years, We held that the "erroneous prediction regarding parole was not sufficiently deficient to make his plea invalid." Id. at 1394.
 
 
 39
 In Shah v. United States, 878 F.2d 1156 (9th Cir.1989), the § 2255 petitioner claimed ineffective assistance of counsel because his counsel had told him that if he pleaded guilty the court would not consider his prior criminal record. Among other reasons for rejecting this claim, we noted that at the guilty plea hearing the petitioner stated that no promises or agreements about his sentence had been made with the government and that the judge told him he would determine the sentence after considering a probation report. Id. at 1159. Similarly, in our case the judge made clear to Carrington that he would decide the sentence based on the Sentencing Guidelines, and that "no one--not your attorney, not [the prosecutor], or me--can say now how the guidelines will apply in your case."
 
 
 40
 Carrington relies on two cases, Iaea, supra, and Chacon v. Wood, 36 F.3d 1459 (9th Cir.1994). We conclude that the extreme facts of these cases distinguish them from the pending case. In Iaea, the habeas petitioner claimed that his counsel has misrepresented the consequences of pleading guilty. We held that counsel's assistance had been deficient, and remanded the case for an evidentiary hearing on the issue of prejudice. We stated that "[t]hough a mere inaccurate prediction, standing alone, would not constitute ineffective assistance, the gross mischaracterization of the likely outcome presented in this case, combined with the erroneous advice on the possible effects of going to trial, falls below the level of competence required of defense attorneys." Iaea, 800 F.2d at 865 (emphasis added, citations omitted).
 
 
 41
 Iaea recognized an exception to the general rule that inaccurate sentence predictions by defense counsel do not entitle the prisoner to habeas relief. The extreme facts of Iaea that distinguish it from the pending cause include at least the following: (1) in Iaea defense counsel told the defendant that by pleading guilty he stood a good chance of getting probation, id. at 863, while in our case Carrington does not show that counsel predicted probation; (2) in Iaea counsel threatened to withdraw and the defendant's brother threatened to withdraw the bail money he had posted if the defendant did not plead guilty, id., neither of which occurred in our case; (3) in Iaea counsel told the defendant that his chances of getting an extended sentence were "almost zero," id., and he got a life sentence; (4) in Iaea counsel not only inaccurately predicted the guilty plea sentence, but misinformed the defendant of the consequences of going to trial, by incorrectly telling the defendant that he was subject to a minimum sentencing statute if he went to trial, id. at 864-65, while in our case Carrington does not demonstrate that counsel misrepresented the consequences of going to trial; and (5) in Iaea the record was "replete with evidence that Iaea was very reluctant to plead guilty and that defense counsel and Iaea's brother had a great deal of trouble convincing him to do so," id. at 865, while in our case Carrington does not demonstrate that he was extremely reluctant to plead guilty.
 
 
 42
 Chacon, supra, is also distinguishable. In that case, the habeas petitioner claimed that an interpreter had deliberately mistranslated defense counsel's advice concerning his sentence if he pleaded guilty. The petitioner claimed that the interpreter told him he would only have to serve 3 months in prison, and he received a prison term of at least, 60 months. Chacon, 36 F.3d at 1460-61. We remanded the case for an evidentiary hearing. We concluded that the disparity between the predicted and actual sentence was a "gross mischaracterization of the likely outcome" under Iaea. Id. at 1464 (quoting Iaea, 800 F.2d at 865). In Chacon, there was a claim of deliberate misrepresentation; the petitioner claimed that the interpreter "had engaged in a pattern and practice of intentionally mistranslating court proceedings and inducing Spanish-speaking defendants to plead guilty involuntarily." Chacon, 36 F.3d at 1462. Carrington does not argue that his counsel intentionally misled him. Further, the actual sentence in Chacon was at least 20 times the prediction, a far greater disparity than in our case. And in Chacon there is no discussion of a plea colloquy such as we find in the pending case, where the court clearly and repeatedly advised the defendant that he should not rely on any promises or predictions from defense counsel or others as to the actual sentence he would receive.
 
 
 43
 Carrington has not met the prejudice requirement of Strickland. The general rule that an inaccurate sentence prediction by defense counsel does not invalidate a guilty plea applies here, since Carrington was repeatedly advised in the plea agreement and at the Rule 11 hearing that no particular sentence was guaranteed, and that he could not rely on his counsel's prediction.
 
 B. Failure to Investigate Claim
 
 44
 Carrington argues that his counsel was ineffective because he failed to conduct a reasonable investigation of the case before persuading Carrington to plead guilty. Carrington argues that he told his counsel that he was not involved with the other defendants after late 1987, thus raising the "viable defense of multiplicity." By this Carrington is arguing that with further investigation his counsel might have been able to establish that there was not one large conspiracy as alleged in the indictment, but several smaller ones.
 
 
 45
 Strickland, itself a guilty plea case, recognized that "[j]udicial scrutiny of counsel's performance must be highly deferential." 466 U.S. at 689. Carrington does not overcome "the strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." Id. Further, Carrington does not meet the prejudice requirement of Strickland, by demonstrating a reasonable probability that, but for his counsel's alleged unprofessional error, "the result of the proceeding would have been different." Id. at 694. Carrington does not show show a reasonable probability that a further or more thorough investigation would have convinced Carrington not to plead guilty, or would have convinced his counsel to recommend against a guilty plea. Further Carrington does not show that he would have fared better by proceeding to trial. He does not show a reasonable probability that there were in fact multiple conspiracies and that he could have prevailed at trial on this theory. On the contrary, Carrington pleaded guilty to the conspiracy count alleged in the indictment. As we noted in the direct appeal, Carrington, in his motion to withdraw his guilty plea, "argued that evidence indicating the existence of several smaller conspiracies, rather than one larger conspiracy alleged in the indictment, became available to him prior to sentencing.... Reading all the evidence in the light most favorable to him, the most it indicates is that his involvement in the conspiracy ended sometime in 1987. This is exactly what he admitted to in his plea colloquy. Carrington points to no new evidence that casts even remote doubt on the fact that he was involved in the distribution of 500 grams." United States v. Carrington, No. 90-30437, at 3-4 (9th Cir. April 9, 1992).
 
 C. Rule 11 Claim
 
 46
 Carrington claims that the district court failed to comply with the requirements of Fed R.Crim. P. 11 when it accepted his guilty plea. Rule 11 requires that certain issues must be addressed by the district court before it can accept a guilty plea. Among other things, Rule 11(c) provides that the court must inform the defendant and determine that he understands: (1) the nature of the charge, the mandatory minimum penalty, the maximum possible penalty including the effect of any special parole or supervised release term and the applicability of the sentencing guidelines; (2) that the defendant has a right to be tried by a jury and has the right at trial to counsel, to confront and cross-examine adverse witnesses, and the right against self-incrimination; and (3) that the defendant's answers to the court's questions may later be subject to a charge of perjury. The court must also determine that the plea is "voluntary and not the result of force or threats or of promises apart from a plea agreement" under Rule 11(d).
 
 
 47
 We assume without deciding that Carrington has not waived this issue by failing to raise it in his direct appeal. Carrington contends that his appellate counsel (also Mr. West) was ineffective, arguing that West's "ineffectiveness was not a fleeting faux pas but rather characterized his representation of Mr. Carrington from arraignment through direct appeal."
 
 
 48
 Rule 11(h) recognizes that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." We will uphold a guilty plea where there has been "a minor or technical violation of Rule 11," but must reverse if the violation would "nullify or dilute important Rule 11 safeguards." United States v. Gastelum, 16 F.3d 996, 999 (9th Cir.1994) (citations omitted).
 
 
 49
 We have carefully reviewed the Rule 11 hearing and conclude that the essential requirements of Rule 11 were met. Carrington argues that the plea colloquy did not establish that the plea was knowing and voluntary. Carrington acknowledged at the hearing that he had gone over the indictment with his counsel, that counsel had gone over the government's evidence with him, and that no one had put unfair pressure on him to plead guilty.
 
 
 50
 Carrington also argues that the court did not explain mandatory supervised release. The court explained that Carrington faced a period of supervised release of at least four years. The court also explained that "parole, under the federal law, has been abolished and there is no parole. We do have what is called supervised release, which means that after you are released from custody you would be under supervision for a period of time. But the parole rules that we used to have have just been abolished."
 
 
 51
 Carrington also complains that the colloquy did not adequately establish that Carrington understood the charges against him. Again, the court confirmed that Carrington had reviewed the indictment with his Lawyer and had gone over the government evidence against him, The court read Carrington count 1 of the indictment, and confirmed that he was pleading guilty to it. Carrington confirmed the names of other conspirators, that he had an agreement with them, that he was involved in the distribution of cocaine for sale, and that the conspiracy involved 500 or more grams of cocaine as alleged in the indictment. We find this colloquy sufficient under Rule 11.
 
 D. Denial of Evidentiary Hearing
 
 52
 Carrington argues that the district court erred in denying him an evidentiary hearing. Denial of a § 2255 evidentiary hearing is reviewed for abuse of discretion. Watts v. United States, 341 F.2d 275, 277 (9th Cir.1988). As we explained in Watts, "[i]n deciding such motions judges need not conduct full evidentiary hearings. Section 2255 itself 'recognizes that there are time's when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner.' ... Section 2255 requires only that the judge give the prisoner's claim 'careful consideration and plenary processing, including full opportunity for presentation of relevant facts.' " Id. (citations omitted).
 
 
 53
 We find no abuse of discretion. The same judge took the plea and ruled on the § 2255 motion. The court had a substantial record available to review without a hearing. As explained above the court could reconcile the affidavits Carrington offered with the statements he made in the plea agreement and the Rule 11 hearing. Even assuming, as the court did, that Carrington believed he would receive a shorter sentence based on his attorney's representations, the record is unmistakably clear that Carrington swore he had not been promised a particular sentence, and understood that no one knew for sure what the sentence would be at the time of the guilty plea. Based on the law discussed above, the court was justified in ruling that Carrington was not entitled to relief, even if the § 2255 affidavits were taken as true.
 
 
 54
 Similarly, the lack of proof of multiple conspiracies, or that a further investigation would have altered Carrington's decision to plead guilty or his counsel's recommendation in that regard, together with Carringtons admission at the Rule 11 hearing that he was guilty of the conspiracy alleged in the indictment, was sufficient to rule against Carrington's claim that his counsel failed to properly investigate the case. And as to the alleged failure to comply with Rule 11, the court had the transcript of the Rule 11 hearing, which is all it needed to decide this claim. "The dictates of Rule 11 and the federal policy of fair and efficient judicial administration require that the reviewing court look solely to the record of the plea proceeding." United States v. Kamer, 781 F.2d 1380, 1383 (9th Cir.1986).
 
 
 55
 AFFIRMED.
 
 
 
 **
 Honorable Thomas M. Reavey, Senior United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3