Robert E. HENRY, Petitioner–Appellee,

v.

Wayne ESTELLE, Warden,
Respondent–Appellant.

No. 91–55691.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 9, 1991.

Decided May 18, 1993.

Everett B. Clary, O'Melveny & Myers, Los Angeles, CA, for petitioner-appellee.

David F. Glassman, Deputy Atty. Gen., Los Angeles, CA, for respondent-appellant.

Before: FLETCHER, D.W. NELSON, and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

This is an appeal from a grant of habeas corpus by the United States District Court for the Central District of California. Petitioner Robert Henry contends that he was denied due process at his trial for child molestation because evidence of an uncharged crime was erroneously admitted and then followed by a jury instruction emphasizing that same evidence. The district court found that Henry had exhausted his state remedies and that the testimony in question was so inflammatory as to infect the entire trial and preclude fundamental fairness. We affirm.

**Facts and Proceedings Below**

Henry was tried for seven counts of child molestation before a jury in the Superior Court of California. He was charged with one count of molesting a boy named Andrew and six counts of molesting a boy named Michael. Henry was found guilty of the count involving Andrew, a mistrial was declared as to five of the counts and Henry was acquitted of one count. He was sentenced to six years in prison.

The incident involving Andrew allegedly occurred when Andrew was attending St. Paul's Church and Day School and Henry was the rector of the church and dean of the school. Andrew could not remember if he was in kindergarten or first grade at the time of the incident. He was ten years old and in fourth grade at the time of his testimony.

On the day in question, Andrew was apparently outside Henry's office waiting for his parents, who were late, to pick him up. Andrew testified that Henry called Andrew into his office alone and closed the door behind them. Henry allegedly told Andrew to lie on the couch and pull down his pants. Andrew stated that Henry then touched him on the penis for about three minutes. Andrew was then told to leave the office and wait for his parents.

Henry contends that molestation could not have occurred during this incident. Henry knew that Andrew's parents were late and could arrive at any moment. Furthermore, the area outside the office was normally bustling with adults and children. There was a window in Henry's office that looked out onto walkways used by the children, and observers apparently could see through the drapes on this window.

At trial, Tomoko and Tobias Yeh, members of St. Paul's Episcopal Church and parents of children who attended the school, testified for the prosecution. In April 1987, Ms. Yeh was told by the wife of the police chief that Henry was believed to have molested Andrew. The Yehs confronted Henry, who allegedly stated that something had happened but that it had been misinterpreted, and denied molesting Andrew.

After the prosecution rested and the defense presented its evidence, the prosecution moved to reopen their case in chief to present the testimony of Thomas Hackett. Hackett was prepared to testify that almost twenty years earlier Hackett's eleven year old son told him that Henry had touched him. When Hackett confronted Henry with the allegation, Henry allegedly responded that he had been counseling Hackett's son for an emotional problem which caused him to grab himself when nervous, and that the son was mistaken about the touching.

The trial judge found that the exchange between Hackett and Henry resembled the meeting between the Yehs and Henry because it was a similar confrontation, with a similar denial and explanation. The judge ruled that when the defendant used the same excuse to explain his conduct on more than one occasion, his prior statements were admissible to prove the falsity of the explanation. Henry objected that the evidence had no probative value and that there was no evidence to show that the prior explanation to Hackett had, in fact, been false. Henry

also objected to the prejudice caused by the introduction of the testimony. The trial judge overruled these objections.

Hackett then testified that in 1969 his eleven-year-old son attended a church school, where Henry was rector of the church. His son informed him that he was touched by Henry, and Hackett confronted Henry with the information. Henry responded that he had been counseling the son on a problem the son had regarding his grabbing himself when he was nervous. Henry did not indicate where the son was grabbing himself, but Hackett felt Henry's intimation was that the son was grabbing his penis. Hackett testified he then told Henry that, according to his son's story, it sounded more like molestation. Henry responded that his son was "mistaken or misunderstood, words to that effect."

The trial judge attempted to minimize the danger of the testimony by giving a cautionary jury instruction, part of which read:

> Such evidence was received and may be considered by you only for the limited purpose of determining if it tends to show that the defendant's present out-of-court explanation, if you find that it was made, of his conduct, is not genuine.

> When a defendant uses a similar explanation of his conduct on more than one occasion, his prior statements may, if found to have been made, show that his present explanation, if found to have been made, is not genuine.

Henry appealed his conviction to the California Court of Appeal. He argued that the introduction of the testimony was contrary to California law and that its introduction resulted in a "miscarriage of justice" under the California Constitution, article VI, section 13. The Court of Appeal unanimously ruled that the admission of the testimony was error and that the instruction, instead of alleviating the risk of error, virtually required the forbidden inference that Henry was a person of bad character or a person with a disposition to commit bad acts. However, the majority ruled that the error was not prejudicial because it was "not reasonably probable a different result would have been reached in the absence of the admission of this evidence."

After rehearing was denied and his petition for review to the California Supreme Court was rejected, Henry filed a habeas corpus petition in the United States District Court for the Central District of California. The district court granted the petition, adopting the United States Magistrate's finding that Henry had exhausted his state remedies and that the error violated Henry's due process right to receive a fundamentally fair trial.

### Standard of Review

■ We review de novo the district court's decision on a habeas corpus petition. *Thomas v. Brewer,* 923 F.2d 1361, 1364 (9th Cir. 1991).

### Discussion

1. *Exhaustion of state remedies.*

■ A state prisoner must exhaust his state remedies before petitioning for a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b); *McQueary v. Blodgett,* 924 F.2d 829, 833 (9th Cir.1991). Principles of comity and deference underlie the exhaustion requirement, which assures that the state courts will have the first " 'opportunity to pass upon and correct' alleged violations of" state prisoners' federal rights. *Wilwording v. Swenson,* 404 U.S. 249, 250, 92 S.Ct. 407, 409, 30 L.Ed.2d 418 (1971) (quoting *Fay v. Noia,* 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963)).

■ To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim to the state courts. *Picard v. Connor,* 404 U.S. 270, 277–78, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971). The purpose of this "fair presentation" requirement is to "provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (quoting *Picard,* 404 U.S. at 276–77, 92 S.Ct. at 512–13). We have held that a federal claim "is fairly presented if the petitioner has described the operative facts and legal theory upon which his claim is based." *Tamapua v. Shimoda,* 796 F.2d 261, 262 (9th Cir.1986).

There is no doubt that Henry presented the "operative facts" to the California court. The question is whether he presented the "legal theory." Henry's federal habeas claim is that the erroneous admission of evidence at his state criminal trial, followed by the jury instruction, violated his federal constitutional right to due process and was so prejudicial as to require reversal of the conviction. However, in his direct appeal in state court, Henry did not allege a federal due process violation; he argued only that the erroneous admission of the twenty-year-old uncharged prior act resulted in a "miscarriage of justice" under the California Constitution. Cal. Const. art. VI, § 13. Thus, Henry's federal habeas petition involves a claim that is facially different from the one he presented in state court.

 Henry gave the state court no indication of the federal due process nature of his claim, arguing only that the trial court committed an error of state law; he never mentioned "constitution," "constitutional right," or "due process." [1] However, to state a federal due process claim it is not necessary to invoke "the talismanic phrase 'due process of law' " or cite "book and verse on the federal constitution;" petitioner need only make "essentially the same arguments" before the state and federal courts to exhaust a claim. *Tamapua,* 796 F.2d at 262–63. We find that Henry has done so, regarding both his argument that the state law evidentiary error was a violation of his federal due process right and his argument that the error was so prejudicial as to warrant reversal.

As to the first point, it is well established that denial of due process in a state criminal trial "is the failure to observe that fundamental fairness essential to the very concept of justice. [The court] must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941). Thus, when reviewing the erroneous admission of testimony, the court must "consider whether the admission of the evidence so fatally in-

fected the proceedings as to render them fundamentally unfair." *Jammal v. Van de Kamp,* 926 F.2d 918, 919 (9th Cir.1991). Similarly, when reviewing an erroneous jury instruction, "[t]he only question ... is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' " *Estelle v. McGuire,* —— U.S. ——, ——, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991) (quoting *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)). This is very similar to the inquiry California courts make in determining when a "miscarriage of justice" has occurred: whether "the constitutional requirements of a fair trial and due process" have been met. *People v. Watson,* 46 Cal.2d 818, 299 P.2d 243, 254 (1956), *cert. denied,* 355 U.S. 846, 78 S.Ct. 70, 2 L.Ed.2d 55 (1957). Overall, then, Henry's arguments in state and federal court as to the existence of error were "essentially the same arguments." *Tamapua,* 796 F.2d at 262.

We reach the same conclusion as to Henry's arguments regarding the prejudicial effect of the error. Under California law, a miscarriage of justice is reversible only when the defendant can show that "it is reasonably probable that a result more favorable to [him] would have been reached in the absence of the error." *Watson,* 299 P.2d at 254. The federal standard, recently set forth by the Supreme Court in *Brecht v. Abrahamson,* —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), is phrased somewhat differently, but is essentially the same test; the Supreme Court held that in reviewing a collateral challenge based on a "trial-type" constitutional error, a federal court will not reverse the conviction unless the petitioner shows that the error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Id.* —— U.S. at ——, 113 S.Ct. at 1714 (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).

The errors that occurred at Henry's trial—the introduction of Hackett's testimony and the subsequent jury instruction—were clear-

---

**1.** Henry did mention "due process" at least twice in his opening brief to the California Court of Appeal. However, he did so in connection with his claim that the prosecution's failure to advise him of the time of the offense denied him due process—a claim separate and distinct from the one at issue in this appeal.

ly errors of the "trial type" because they "occurred during the presentation of the case to the jury." *Arizona v. Fulminante*, —— U.S. ——, ——, 111 S.Ct. 1246, 1264, 113 L.Ed.2d 302 (1991). Therefore, under the new *Brecht* harmless error standard, Henry must prove that the testimony had a "substantial and injurious effect or influence" on the verdict.[2] This standard is similar to the *Watson* standard used by California courts; under both tests, the burden is on the defendant to show that the error had a significant inculpatory impact. When the California Court of Appeal determined that Henry had failed to show that it was "reasonably probable" that he would have been acquitted had the Hackett testimony not been introduced (the *Watson* standard), it effectively determined that Henry had failed to show that the testimony had a "substantial and injurious effect or influence" on the outcome (the *Brecht* standard).

Henry has thus made "essentially the same arguments" before the state and federal courts regarding both the existence of federal constitutional error and the prejudicial impact thereof. We hold that he has exhausted his state post-conviction remedies.

### 2. Due process violation.

We next consider whether in light of the record as a whole, the admission of the Hackett testimony and the subsequent jury instruction violated Henry's federal due process right; if so, we must then determine whether the error was sufficiently prejudicial as to warrant reversal. We answer both questions in the affirmative.

The admission of inculpatory testimony violates due process only "if there are *no* permissible inferences the jury may draw from the evidence" and the testimony is "of such quality as necessarily prevents a fair trial." *Jammal*, 926 F.2d at 920 (quotation omitted). *See also McGuire*, —— U.S. at —— – —— 112 S.Ct. at 481–82 (1991). Hackett's testimony was not probative of any material issue in the case;[3] there was no proof that Henry had committed the uncharged act, it was remote in time, and the only inference that the jury could have drawn from the testimony was that Henry had molested Hackett's son and was a person of depraved character who was consequently more likely to have molested Andrew. This inference is impermissible. Fed.R.Evid. 404.

Furthermore, the testimony and subsequent jury instruction were highly prejudicial. The prosecution's case against Henry was not particularly strong. The main prosecution witness was Andrew himself, who was only six or seven years old when the alleged molestation occurred. The defense offered evidence that cast doubt on Andrew's testimony, such as the fact that people could see through the windows of Henry's office and the fact that Andrew's parents were late and could have arrived at any point during the occurrence of the alleged molestation.

The prosecution bolstered Andrew's testimony with that of the Yehs, who testified they had heard rumors that Henry had molested Andrew; when they confronted Henry with that allegation, Henry responded that something had happened but that it had been misinterpreted. Hackett's testimony implied

---

2. *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), does not bar the retroactive application of the *Brecht* standard to Henry's case. *Teague* held that a new constitutional rule of criminal procedure may generally not be applied retroactively to a case on collateral review. *Id.* at 307, 109 S.Ct. at 1073. However, *Teague* also held that "once a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated." *Id.* at 300, 109 S.Ct. at 1069 (quotation omitted). Because the Supreme Court applied the *Brecht* standard to Brecht himself, *Brecht*, —— U.S. at ——, 113 S.Ct. at 1715, "evenhanded justice" thus requires that we apply it to Henry as well.

3. This fact distinguishes Hackett's testimony from the prior injury evidence at issue in

*McGuire*. There, the defendant had been tried for the killing of his infant daughter, and the prosecution had introduced evidence indicating that the baby had earlier suffered rectal tearing and fractured ribs. *McGuire*, —— U.S. at ——, 112 S.Ct. at 478. McGuire was convicted and subsequently sought habeas relief on the ground that this prior injury evidence was irrelevant and highly prejudicial. *Id.* —— U.S. at ——, 112 S.Ct. at 479. The Supreme Court held that the evidence was relevant because it tended to show that the baby's death was not accidental and thus was probative of intent. *Id.* —— U.S. at ——, 112 S.Ct. at 480–81. Here, however, Hackett's testimony did not tend to make any of the elements of the charged offense more likely.

that Henry lied to Hackett and thus also to the Yehs, despite the fact that no evidence was presented to show that Henry's explanation to Hackett was false. As the magistrate pointed out, Hackett's testimony was particularly prejudicial given the "emotionally charged atmosphere present in any child abuse prosecution."

The prejudicial nature of the testimony was magnified by its timing. The prosecution was allowed to re-open its case-in-chief to present Hackett as the last witness, and he testified on the day of closing arguments. The prosecutor emphasized the testimony at length in his closing argument. The trial court's jury instructions only compounded the prejudicial effect. The California Court of Appeal found that it was error to admit the testimony of Hackett and, although it found the error not to be prejudicial, noted:

> The instruction given to the jury, while advising them the former accusation and denial cannot be used to show appellant has bad character or a disposition to commit such acts but only to determine whether his out-of-court explanation of his conduct is genuine, of necessity required the jury to focus on the prior accusation to determine whether his present denial was not true. The only way such a determination could be made is to assume the earlier accusation was true. The instruction virtually requires the inference the first part of the instruction appears to forbid.

The instruction was given not once but twice: once directly before Hackett's testimony and again during the general jury instructions.

We hold that the testimony and jury instruction were highly prejudicial, and they rendered Henry's trial fundamentally unfair and denied him due process. We find that Henry has shown that the testimony and jury instruction had a "substantial and injurious effect or influence" on the jury's verdict, and the district court's order granting the petition is affirmed.

AFFIRMED.