39 F.3d 1187
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
William Edward LAMBERT, Petitioner-Appellant,
v.
Manfred F. MAASS, Respondent-Appellee.
 No. 93-36055.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 16, 1994.
Decided Oct. 27, 1994.
 
 1
 Before: THOMPSON and LEAVY, Circuit Judges, and TASHIMA, District Judge.*
 
 
 2
 MEMORANDUM**
 
 OVERVIEW
 
 3
 William Edward Lambert appeals the district court's denial of his 28 U.S.C. Sec. 2254 habeas corpus petition, challenging his conviction on three counts of kidnapping in the first degree, rape in the first degree with a firearm, and menacing. He claims that (1) evidence of prior bad acts was improperly admitted at his trial in violation of his right to due process; (2) his right against self-incrimination was violated by introduction of his inculpatory statements at trial; and (3) the trial court enhanced his sentence under Oregon's "dangerous offender" statute, Oregon Revised Statute 161.725, based on insufficient evidence.
 
 
 4
 We have jurisdiction under 18 U.S.C. Sec. 1291 and we affirm.
 
 FACTUAL BACKGROUND
 
 5
 About six months after Lambert married Susanna Stevenson, he began a cycle of physical and sexual abuse against her daughter, Denise Foster. Denise, who was fourteen years old at the time of trial, initially did not inform anyone of the abuse. Eventually, however, she told her mother about Lambert's physical, though not about his sexual, misconduct. Denise was taken into foster care, but she returned home two weeks later pursuant to an agreement between Susanna and the Children's Services Department, which required Susanna to remove Lambert from the home. With Susanna's permission, however, Lambert moved into another house that she owned across the street.
 
 
 6
 On the evening of January 20, 1989, Susanna, at his request, visited Lambert's residence. Lambert pretended to be in the bathroom by running water in the shower, but instead stole across the street and into Denise's bedroom. Once there, he climbed on top of her while she was asleep. She got out from under him with the help of her brothers and sisters. By that time, Susanna had returned to the home and forced Lambert to leave.
 
 
 7
 Early the next morning, Lambert again persuaded Susanna to come to his house. When she arrived, he forced her at gunpoint to call Denise and prompt her to come over as well. After Denise arrived, Lambert threatened her with a shotgun and raped her.
 
 
 8
 Before long, both women managed to escape. Lambert was arrested soon thereafter. The police advised him of his Miranda rights and he stated that he understood them. Later, he read a waiver form aloud and signed it. He then made various incriminating statements.
 
 
 9
 Prior to trial, Lambert moved to suppress his statements to the police on the ground that they were involuntary. His motion was denied. Over Lambert's objection, the trial court also permitted the state to introduce evidence of his prior sexual misconduct with Denise. Lambert was convicted on all counts, and the trial court sentenced him to an enhanced sentence under Oregon's "dangerous offender" statute.
 
 STANDARD OF REVIEW
 
 10
 We review de novo the district court's decision to grant or deny a petition for habeas corpus. Adams v. Peterson, 968 F.2d 835, 943 (9th Cir.), cert. denied, 113 S.Ct. 1818 (1992). However, "[t]o the extent it is necessary to review findings of fact, the clearly erroneous standard applies." Thomas v. Brewer, 923 F.2d 1361, 1364 (9th Cir.1991).
 
 DISCUSSION
 A. Admissability of Prior Bad Acts Evidence
 1. Availability of Federal Habeas Review
 
 11
 Whether a state trial court correctly applied its own rules of evidence is not a matter cognizable on federal habeas corpus. Estelle v. McGuire, 112 S.Ct. 475, 480 (1991); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir.1991). However, if "the admission of evidence so fatally infected the proceedings as to render them fundamentally unfair," habeas corpus relief is available. Jammal, 926 F.2d at 919. Lambert claims that admission of evidence that he engaged in prior acts of sexual misconduct with Denise Foster compromised his due process right to a fair trial by "permitting [the jury] to find him guilty merely because they felt it was his character to commit sexual assault."
 
 
 12
 As a preliminary matter, the government argues Lambert's due process claim is not appropriate for federal habeas corpus review because it was not adequately raised and litigated in state court. Although Lambert relied partly on the Due Process Clause in his state trial court motion to exclude evidence of his prior acts, he appealed the denial of that motion to the Oregon appellate court based only on state evidence law.
 
 
 13
 Federal habeas corpus is available only after all state avenues of relief have been exhausted. 28 U.S.C. Sec. 2254(b) (1988). However, exhaustion of state remedies requires only that a petitioner "fairly present[ ] the substance of his federal claim to the state courts." Henry v. Estelle, 993 F.2d 1423, 1425 (9th Cir.1993). See also McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir.1991). "[A] federal claim is fairly presented if the petitioner has described the operative facts and legal theory upon which his claim is based." Henry, 993 F.2d at 1425 (quoting Tamapua v. Shimoda, 796 F.2d 261, 262 (9th Cir.1986)). Thus, "to state a federal due process claim it is not necessary to invoke 'the talismanic phrase due process of law' or cite 'book and verse on the federal constitution.' " Id. at 1426 (quoting Tamapua, 796 F.2d at 263). So long as a petitioner makes "essentially the same arguments" before the state and federal courts, the exhaustion requirement is satisfied. Id.
 
 
 14
 In his direct appeal, Lambert asserted that the government introduced evidence of his prior sexual acts with Denise Foster, in violation of Oregon Evidence Code Sec. 404(3), to prove his predisposition to commit the charged crime. He presently claims that introduction of this evidence violated his right to a fair trial by permitting the jury to convict him based on his sordid character and prior bad acts, rather than on a reasoned determination that the prosecution had established his guilt beyond a reasonable doubt. Under either theory, the threshold question is whether the "other acts" evidence was in fact offered to prove Lambert's propensity to commit sexual assault. Thus, we conclude that Lambert presented "essentially the same argument" to the Oregon Court of Appeals and we are free to address the merits of his habeas claim.
 
 2. Merits of the Claim
 
 15
 Traditionally, evidence of prior bad acts, when used to show a propensity to behave accordingly, is excluded at trial in order to "force the jury, as much as humanly possible, to put aside emotions and prejudices ... and decide if the prosecution has convinced them, beyond a reasonable doubt, that the defendant is guilty of the crime charged." McKinney v. Rees, 993 F.2d 1378, 1384 (9th Cir.1993).
 
 
 16
 [T]he underlying premise of our criminal justice system [is] that the defendant must be tried for what he did, not who he is. Under our system, an individual may be convicted only for the offense of which he is charged and not for other unrelated criminal acts which he may have committed. Therefore, the guilt or innocence of the accused must be established by evidence relevant to the particular offense being tried, not by showing that the defendant has engaged in other acts of wrongdoing.
 
 
 17
 United States v. Hodges, 770 F.2d 1475, 1479 (9th Cir.1985). Other crimes evidence "is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." Michelson v. United States, 335 U.S. 469, 476 (1948).
 
 
 18
 We have held, however, that due process is violated "[o]nly if there are no permissible inferences the jury may draw from the evidence." McKinney, 993 F.2d at 1384 (quoting Jammal, 926 F.2d at 920). Although prior bad acts evidence cannot be used to demonstrate a criminal predisposition, such evidence is admissable for purposes of proving other relevant facts, including motive, identity, knowledge, opportunity, intent, and lack of accident or mistake. See, e.g., United States v. Hadley, 918 F.2d 848 (9th Cir.1990) (approving use of evidence that the defendant performed similar acts of sexual gratification on previous victims), cert. dismissed as improvidently granted, 113 S.Ct. 486 (1992). Moreover, a defendant cannot complain about the admission of bad acts evidence when he himself opens the door, either by introducing the subject or by advancing a theory that makes his prior acts relevant on an issue other than criminal propensity. See, e.g., United States v. Bailleaux, 685 F.2d 1105, 1110 (9th Cir.1982) (permitting the government to inquire into the facts underlying a prior conviction where the defendant first testified about the crime on direct examination); United States v. Sarault, 840 F.2d 1479, 1485-86 (9th Cir.1988) (holding other crimes evidence admissable, even in the prosecution's case-in-chief, when relevant to refute a defense that the accused clearly intends to advance); United States v. Lewis, 837 F.2d 415, 418-19 (9th Cir.) (same), cert. denied, 488 U.S. 923 (1988); United States v. Hooten, 662 F.2d 628, 634-35 (9th Cir.) (same), cert. denied, 455 U.S. 1004 (1981).
 
 
 19
 In this case, the government did not introduce evidence of Lambert's prior acts to show his propensity to engage in sexual misconduct, either in general or with Denise specifically.[1] Rather, the evidence was offered to refute Lambert's claim that Denise and her mother fabricated their testimony concerning the kidnappings and rape because their earlier complaints that Lambert physically abused Denise failed to elicit an adequate response from the police.[2] The trial court carefully instructed the jury to consider the evidence only for this limited purpose, and warned the prosecution not to elicit any details from the victim about the prior acts.[3] As the district court correctly ruled, once the defendant advanced the theory that the victims were motivated to "cry rape," the prosecution was entitled to respond by showing the rape charge was not a recent fabrication, but rather the culmination of a long pattern of sexual abuse.
 
 
 20
 Lambert cites Henry v. Estelle, 993 F.2d 1423 (9th Cir.1993), for the proposition that it is " 'highly prejudicial' to admit evidence which has no other relevance than to show propensity toward sexual assault." That much is correct. In Henry, we disallowed the admission of evidence of the defendant's prior sexual acts in a prosecution for child molestation. In that case, however, we found that admission of the evidence violated due process because (1) the evidence was not probative of any material issue in the case; (2) there was no proof that the defendant had actually committed the uncharged act; (3) the uncharged act was too remote in time (over ten years); and (4) the only inference that the jury could have drawn from the evidence was that the defendant had a depraved character and, thus, was more likely to have committed the charged crime. Id. at 1427.
 
 
 21
 The prior acts evidence involved in this case does not pose the same due process concerns. First, the evidence of Lambert's past sexual misconduct was probative of an issue which the defense itself made material to the case--whether or not the charges against Lambert had been fabricated. Second, there was ample evidence that Lambert in fact committed the prior acts of sexual abuse. Denise testified that Lambert subjected her to repeated acts of sexual intercourse, constantly accused her of sleeping with other relatives and with neighbors, and often searched her clothes, including underneath her bra. Her testimony was corroborated by Detective Wagner, who testified that Lambert admitted having sexually abused Denise in the past, and by Susanna, who testified that Denise informed her of Lambert's sexual assaults. Based in part on this evidence, Lambert was convicted in another case of raping Denise on five prior occasions.[4] Third, the past sexual abuse was not remote in time: It began only three years before the trial, and Denise informed her mother of its occurrence just three weeks before the January 21, 1989 rape and kidnapping incident. Finally, there was a permissible inference that the jury could have drawn from the evidence--namely, that the rape and kidnapping charges against Lambert were not fabricated. Thus, we conclude that admission in evidence of Lambert's past sexual acts of misconduct with Denise did not violate his right to due process and a fair trial.
 
 
 22
 B. Admissability of Incriminating Statements
 
 
 23
 Lambert next argues that the admission into evidence of incriminating statements he made to police after his arrest violated his Fifth Amendment right against self-incrimination. He asserts that he was too intoxicated when making these statements to voluntarily, knowingly and intelligently waive his Miranda rights.
 
 
 24
 To be valid, a Miranda waiver must be both (1) voluntary and (2) knowing and intelligent. Colorado v. Spring, 479 U.S. 564, 573 (1987). On federal habeas review, "a state trial court's determination that a defendant knowingly and intelligently waived his Miranda rights is [a factual issue] entitled to a presumption of correctness pursuant to [28 U.S.C. Sec. 2254(d) ]," unless it is not fairly supported by the record. Collazo v. Estelle, 940 F.2d 411, 416 (9th Cir.1991) (quotation omitted), cert. denied, 112 S.Ct. 870 (1992). See also Derrick v. Peterson, 924 F.2d 813 (9th Cir.1990), cert. denied, 112 S.Ct. 161 (1991). On the other hand, the issue of voluntariness is a legal question subject to de novo review. Collazo, 940 F.2d at 415. Any factual conclusions underlying the voluntariness inquiry, however, "are reviewed for clear error if made by a district court, and are presumed correct under section 2254(d) if made by a state court." Id. See also United States v. Lewis, 833 F.2d 1380, 1384 (9th Cir.1987).
 
 
 25
 The trial court did not err in finding that Lambert voluntarily waived his Miranda rights. A waiver is voluntary if it is "the product of a rational intellect and a free will," whether or not it is alcohol-induced. Medeiros v. Shimoda, 889 F.2d 819, 823 (9th Cir.1989) (citations and quotations omitted), cert. denied, 496 U.S. 938 (1990). Absent evidence that the defendant's " 'will was overcome and his capacity for self-determination critically impaired' because of [alcohol], his waiver of his Fifth Amendment privilege [is] voluntary under [the Supreme] Court's decision in Miranda." Colorado v. Spring, 479 U.S. at 574 (quoting Columbe v. Connecticut, 367 U.S. 568, 602 (1961)).
 
 
 26
 The state trial court found that, although Lambert may have been intoxicated when making the incriminating statements, he was not so mentally incapacitated as to be incapable of exercising his free will. This finding was based on several factual determinations that are supported by the record and entitled to the presumption of correctness. See Terrovona v. Kincheloe, 852 F.2d 424, 428 n. 3 (9th Cir.1988) (stating that "subsidiary fact questions related to waiver (for example, whether intoxication affected a waiver's voluntariness) are subject to the section 2254(d) presumption"), cert. denied, 499 U.S. 979 (1991).
 
 
 27
 Although the trial court did not make a specific finding concerning the amount of alcohol Lambert consumed prior to his arrest, the court did find that his blood-alcohol level was below .25 during interrogation. The court also noted that Lambert was fully capable of following instructions and cooperating with the police, had no difficulty communicating, and displayed no outward signs of intoxication, such as slurred speech or impaired motor abilities.[5] Moreover, testimony indicated that Lambert was able to think rationally and formulate deceptive plans in the period immediately before his arrest.[6] After his arrest and before he was interrogated, Lambert slept.
 
 
 28
 Assuming, as we must, all these facts to be correct, we conclude Lambert was not intoxicated to the point of being unable to exercise his free will when he waived his Miranda rights and incriminated himself. See generally Nelson v. McCarthy, 637 F.2d 1291, 1295-96 (9th Cir.1980) (holding that, based on the trial court's resolution of the factual issues pertaining to intoxication, the defendant's Miranda waiver was voluntary), cert. denied, 451 U.S. 940 (1981).
 
 
 29
 Nor did the trial court err in finding that Lambert's Miranda waiver was knowing and intelligent. A waiver is knowing and intelligent if it is "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Collazo, 940 F.2d at 415 (quotations and citations omitted). The court's factual determination that Lambert knowingly and intelligently waived his Miranda rights is fairly supported by the record and deserves the presumption of correctness. The facts specified above indicate that Lambert was not so mentally impaired by alcohol as to be incapable of understanding both the rights of which he was advised and the consequences of waiving them.
 
 
 30
 C. Sufficiency of Evidence for Dangerous Offender Sentencing
 
 
 31
 Lambert argues there is insufficient evidence in the record to support the trial court's finding that he is a dangerous offender for purposes of Oregon Revised Statute Sec. 161.725, and that the court exercised "unbridled discretion" in enhancing his sentence in accordance with that statute. The standard of review on federal habeas is whether no rational trier of fact could have found beyond a reasonable doubt the facts necessary to support the enhanced sentence. French v. Estelle, 692 F.2d 1021, 1024 (5th Cir.1982) (citing Jackson v. Virginia, 443 U.S. 307, 323 (1979)), cert. denied, 461 U.S. 937 (1983). Factual determinations by state courts are entitled to a presumption of correctness if they are fairly supported by the evidence. 28 U.S.C. Sec. 2254(d).
 
 
 32
 Under Oregon law, a defendant being sentenced for a class A felony, such as Lambert, is subject to an enhanced term of up to thirty years if the court finds that: (1) "because of the dangerousness of the defendant an extended period of confined correctional treatment or custody is required for the protection of the public," and (2) "the defendant is suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another." Or.Rev.Stat. Sec. 161.725.
 
 
 33
 Oregon's "dangerous offender" statute does not grant sentencing judges "unbridled discretion" to determine whether a defendant qualifies for sentence enhancement. State v. Jones, 558 P.2d 1271, 1275 (Or.App.1977). The court may sentence a defendant as a dangerous offender only after: (1) ordering a presentence investigation, including an examination by a psychiatrist or psychologist; (2) conducting a presentence hearing; and (3) considering the presentence report, the psychiatrist's or psychologist's written evaluation, and the evidence in the case. Or.Rev.Stat. Sec. 161.735. See also Jones, 558 P.2d at 1275 (indicating that the court's discretion is constrained by the statutorily required procedures, as well as by the statute's specific identification of the class of defendants to which the dangerous offender categorization may apply).
 
 
 34
 In this case, there is no question that the trial court followed the procedural requirements of the "dangerous offender" statute. Lambert was examined by two experts, both of whom submitted written evaluations and both of whom were subjected to cross-examination at a presentencing hearing. Lambert contends, however, the court's determination that he suffers from a severe personality disorder is not supported by the experts' evaluations.
 
 
 35
 This argument is without merit. The state's expert testified that Lambert has a severe personality disorder and a consequent propensity to commit crimes posing serious danger to others. The defense's expert agreed that Lambert has a personality disorder, but testified that he did not have sufficient information to determine its severity. However, after learning from the court that Lambert was previously convicted of harassing a woman with whom he thought he was having an affair but in fact had no relationship whatsoever, the expert conceded this information indicated "a pathological condition" and "propensity [for] deviant sexuality" that "cause[d] [him] concern." Furthermore, this expert agreed that Lambert's denial of the crime and of his alcohol problem increased the likelihood that he would be a repeat offender. The expert also emphasized that, because of the nature of the crime and Lambert's denial, Lambert continues to be "sexually dangerous."
 
 
 36
 The "dangerous offender" statute requires a sentencing judge to obtain, but not necessarily to accept, an expert's opinion regarding the existence of a severe personality disorder. State v. Huntley, 730 P.2d 1234, 1244 (Or.1986). The judge "is required by statute to make his own findings on that issue." Id. The Oregon Supreme Court has upheld trial courts' findings of severe personality disorder where an expert witness refused to give an opinion for lack of sufficient information, State v. Pryor, 772 P.2d 431 (Or.App.1989), and even where the expert's evaluation unequivocally indicated that the defendant was not so afflicted. Huntley, 730 P.2d 1234.
 
 
 37
 In this case, the trial court based its decision to sentence Lambert as a dangerous offender on Lambert's prior offense, his unacknowledged alcoholism, the nature of his crime, and the experts' evaluations and testimony. We cannot say, based on this record, that no rational trier of fact could have found beyond a reasonable doubt that Lambert has a severe personality disorder indicating a propensity to endanger the safety of others, and that an extended period of confinement is therefore necessary to protect the public.
 
 
 38
 AFFIRMED.
 
 
 
 *
 Honorable A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 After Lambert's trial, the Oregon Supreme held that, in crimes involving illicit sexual acts, Oregon Evidence Code Sec. 404(3) does not preclude the introduction of evidence of other similar acts between the same persons to show the defendant's predisposition toward a particular victim, as distinguished from a propensity to engage in sexual misconduct generally. State v. McKay, 787 P.2d 479, 480 (Or.1990). We need not comment on the constitutionality of McKay. At the time of Lambert's trial, "same-victim" evidence was inadmissable for purposes of proving a specific sexual predisposition. State v. Zybach, 761 P.2d 1334 (Or.Ct.App.1988), rev'd, 775 P.2d 318 (Or.1989). Because McKay expressly applies prospectively only, its holding is not at issue in this case
 
 
 [2]
 Denise testified that she initially reported the physical abuse, admitted by the defendant, but not the sexual abuse because she was afraid of the defendant and of what might happen. Her earlier reports did not result in removal of the defendant from the home
 
 
 [3]
 After opening statements and before the testimony of the first witness, the trial court gave the following limiting instruction to the jury:
 You've heard talk about claims about other sexual contact between the defendant and Denise Foster other than on the day of January 21st, 1989. That evidence was allowed in--is going to be allowed in for very limited purposes only. I want you to use it only for those limited purposes.
 ... [T]here will be a claim that Denise Foster and Susanna Lambert made claims about the ... January 21st, 1989 incident were false. I'm allowing the prosecution to offer evidence about the other sexual activity for the purpose, if any, you wish to use it ... to determine other possible reasons, motives or circumstances relating to the motivation and thinking of Foster and Lambert. Okay?
 ... It's not allowed in, you'll note ... to say that, "Well, because it might have happened before it's more likely to happen this time or anything like that.
 ... [T]he law says you absolutely can't. That it is illogical and illegal for the jury to say because somebody may or may not have done something before, they're more likely to do it this time. You just can't use it for that at all.
 At the conclusion of all the testimony, the trial judge instructed the jury again, as follows:
 Now, ladies and gentlemen, during the trial you've heard evidence that the defendant physically and/or sexually abused one of the alleged victims in this case. That evidence has been admitted for a narrow and limited purpose and you're to consider that evidence only for that narrow and limited purpose.
 You may not consider evidence of the defendant's alleged physical and/or sexual abuse of the alleged victim in this case to draw an inference that the defendant is a bad or sexually abusive person and, therefore, more likely to have committed the crimes for which he now stands at trial.
 You may consider the evidence of the defendant's alleged physical and/or sexual abuse in this case only insofar as it may help you determine the motivations of the victims--of the alleged victims in this case.
 
 
 [4]
 Lambert also argues evidence concerning his past sexual assaults on Denise was improperly admitted because he had not, at the time of trial, been convicted of those offenses. This argument is meritless. Actual conviction is not required to make prior bad acts admissable. Evidence of uncharged acts, if otherwise admissable, need only "amount[ ] to more than ... 'unsubstantiated innuendo.' " United States v. Hadley, 918 F.2d at 851 (quoting Huddleston v. United States, 485 U.S. 681, 689 (1988)). If "sufficient evidence of the prior bad acts exist[s] for a jury to 'reasonably conclude that the act[s] occurred and that the defendant was the actor,' " the evidence is admissable. Id. (quoting Huddleston, 484 U.S. at 689))
 
 
 [5]
 Although Susanna, Denise, the arresting officer and the interrogating detective all smelled alcohol on Lambert's breath, they did not observe any signs of intoxication, such as slurred speech or a staggering gait. Moreover, Susanna and Denise both testified they had seen Lambert drunk on various occasions, they were familiar with his behavior while intoxicated, and he did not appear drunk on the day in question
 
 
 [6]
 Lambert ran water in the shower to trick Susanna into thinking that he was in the bathroom while he ran across the street to assault Denise, and he unplugged and hid Denise's phone once he got there